<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EUGENE MICHAUX | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 05-1430 (JBS) |
| v. | |
| BAYER CORPORATION, <u>et al.</u>, | **OPINION** |
| Defendants. | |

APPEARANCES:

Bruce D. Zeidman, Esq.
COFSKY & ZEIDMAN, LLC
209 Haddon Avenue
Haddonfield, NJ 08033
     Attorney for Plaintiff

Leslie A. Hayes, Esq.
John J. Myers, Esq.
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1515 Market Street
Philadelphia, PA 19102-1909
     Attorneys for Defendants Bayer Corporation, Bayer Corporate
     and Business Services, LLC and Bayer Corporate and
     Disability Business Plan

**SIMANDLE**, District Judge:

     This matter is before the Court upon cross-motions for
summary judgment filed on behalf of Plaintiff Eugene Michaux
("Plaintiff") and Defendants Bayer Corporation, Bayer Corporate
and Business Services, LLC and Bayer Corporate and Disability
Business Plan (collectively, "Bayer").  These motions relate to
Plaintiff's claim that Bayer denied long-term disability benefits

in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a).  The Court finds that there is (1) no conflict of interest in the administration, interpretation and funding of Bayer's disability plan and (2) Plaintiff has failed to demonstrate any procedural irregularities or bias on the part of the plan administrator.  Therefore, application of an arbitrary and capricious standard of review is appropriate. Applying this standard of review to the evidence before the plan administrator (the ERISA Review Committee) at the time the plan administrator made its decision, the Court cannot determine whether Bayer's plan administrator's decision to deny Plaintiff long-term disability benefits was either "without reason, unsupported by the evidence or erroneous as a matter of law," for reasons set forth below.  The Court finds troubling the fact that Defendants' ERISA Review Committee failed (1) to consider evidence related to Plaintiff's favorable determination by the Social Security Administration that he was totally disabled and (2) to have one of its reviewing physicians perform a physical examination of Plaintiff even after two of its reviewing physicians recommended such an examination be performed and Plaintiff's treating physicians had found disabling pain.  As such, this Court will (1) deny Defendants' motion for summary judgment, (2) grant in part Plaintiff's cross-motion for summary judgment to the extent of vacating the ERISA Review Committee's

2

determination, and (3) because the Court considers the record to be incomplete, remand the case back to Defendants' ERISA Review Committee for further administrative review and determination consistent with this Opinion.

**I. BACKGROUND**

    **A.**   **Plaintiff's Employment at Bayer Corporation and Bayer's Long-Term Disability Plan**

Plaintiff Eugene Michaux was employed as a plant engineer at Syborn Chemicals, Inc., a division of Bayer Corporation, until August 8, 2003. (Amended Complaint ¶ 6; Administrative File ¶ 172, 175, 181-83.)  At Bayer, Plaintiff was a participant in the Bayer Disability Plan (the "Plan") that covered both short-term disability and long-term disability ("LTD") of employees.[1]  On August 8, 2003, Plaintiff ceased working and went on a leave of absence claiming that he was unable to perform his duties due to severe knee pain. (Id.)  Plaintiff made an application for and was granted short-term disability pay under Bayer's disability plan. (Id. at 9.)  With Plaintiff's short-term disability payments due to expire on February 2, 2004, Plaintiff applied for LTD benefits on January 19, 2004.  In his application for benefits, Plaintiff attributed

---

    [1]  The short- and long-term disability benefits are described in the Bayer Welfare Benefits Summary Plan Description ("SPD"). (Declaration of Susan Murphy ¶ 3.)

3

his disability to "left knee and back pain."[2]  (Declaration of
Susan W. Murphy, ¶ 5, Ex. D.)

Bayer's LTD Plan provides income and benefits to employees
who are disabled for more than 26 weeks.[3]  (Murphy Decl. ¶ 3,
Ex. B.)  The plan sponsor and the plan administrator, which is
the designated fiduciary of the Plan, is Bayer Corporate and
Business Services, LLC (the "Plan Administrator").  (Murphy
Decl. ¶ 1.)  Under the Plan, the Plan Administrator has
discretion to make final determinations as to any facts
necessary or appropriate for any purpose under the Plan, to
interpret the terms and provisions of the Plans and to determine
any and all questions arising under the Plans.  (Murphy Decl. ¶
1, Ex. A, Plan § 8.4; SPD 167.)

Benefits paid to claimants under the Plan are paid directly
from a voluntary employee's benefits association trust fund (the
"Trust") established by Bayer.  (Declaration of James Martin, ¶¶
2-3; Plan § 8.1.)  Mellon Bank serves as the trustee of the
Trust and Trust funds are used exclusively to pay benefits to
participants under the Plan or expenses associated with the
Plan.  (Martin Decl. ¶ 3)   The trust is funded from two

---

[2]  Plaintiff claims that, beginning in July of 2003, he
began experiencing pain in his left knee which led to his
inability to perform his job as a plan engineer and led to
aggravating a long-standing back ailment.  (AF 145.)

[3]  The Plan is an employee welfare benefits plan, as defined
in ERISA, 29 U.S.C. 1002.

sources: periodic contributions from Bayer and from participant salary reduction contributions.  (Id.; Plan § 8.1.)

Under the terms of the Plan, a claimant must prove that he or she is "totally disabled" in order to be eligible for LTD benefits.  The term "totally disabled" is defined, for purposes of long-term disability, as either being "unable to perform the essential duties of your regular occupation" for the for six months of LTD eligibility or "unable to work at any job for which you are or could become qualified by education, training or experience for any period after the first six months of LTD eligibility."  (SPD 161)

B.   **The Initial Denial of LTD Benefits**

In January of 2004, Plaintiff applied for LTD benefits. The initial review of claims under the Plan is done by Bayer's claims administrator, Broadspire Services, Inc. ("Broadspire").[4] (Amended Compl. ¶¶ 11-12; AF 39-41.)  In support of his LTD application, Plaintiff submitted reports from several doctors.

---

[4] Broadspire (formerly known as Natalsco, Inc.) was doing business as Kemper National Services, Inc. at the time. Broadspire functions as the claims administrator for the Plan under a contract with Bayer.  (Murphy Decl. ¶ 6.)  According to Susan Murphy (Director of Employee Benefits Delivery for Bayer Corporate and Business Services, LLC and the Plan Administrator for Bayer Disability Plans), Broadspire is "not affiliated in any way with Bayer, and its compensation is not based to any extent on the number of claims granted or denied or the amount paid out for disability benefits."  (Murphy Decl. ¶ 6.)  Moreover, the physicians who conducted reviews of Plaintiff's medical records prior to Broadspire's denial of the claim were selected by Broadspire, without input or involvement by Bayer.  (Id.)

- Plaintiff submitted an Attending Provider Statement completed by Dr. Brett Wartenburg, a chiropractor who was treating Plaintiff for knee and back pain. (AF 180.) Dr. Wartenburg reported that Plaintiff was able to perform his job duties only on a limited basis. (Id.) Specifically, Dr. Wartenburg reported that Plaintiff was only capable of doing his "usual and customary [job] duties up to 4 hrs. per day as tolerated." (Id.)

- Plaintiff also submitted a report from Dr. John Gray, M.D. (an orthopedist) stating that Plaintiff was being treated for problems with his left knee and that he had a "long history of some back problems...[and] is having a lot of trouble doing anything right now." (Id. at 175.) Dr. Gray's impression was that Plaintiff's knee was arthritic. (Id.) Dr. Gray referred Plaintiff to "a spine doctor" and his report expressed no opinion on Plaintiff's ability to work. (Id. at 176.)

- On January 26, 2004, Dr. Andre Hu of Reconstructive Orthopedics authored a report stating that Plaintiff's knee pain, which was not due to trauma or accident, had improved 50-70% but that Plaintiff's lumbar back pain was reported worse since August of 2003. (Id. at 172.) No diagnostic tests were planned and physical therapy was recommended but no opinion on Plaintiff's ability to work was expressed. (Id. at 173-74.) On March 2, 2004, Dr. Hu completed a report based upon his earlier examination and recommended certain restrictions on Plaintiff's ability to stand or sit without a break and prolonged bending/twisting but did not mention any physical impairment to Plaintiff's ability to work. (Id. at 177-78.)

- Dr. Richard Hymowitz, M.D., a rheumatologist, evaluated Plaintiff on October 8, 2003. (Id. at 87.) Dr. Hymowitz noted that Plaintiff's "knee pain - improved although [patient] remains symptomatic" and anticipated that Plaintiff could return to work on October 20, 2003. (Id.)

- Finally, Plaintiff also submitted reports from Dr. Steven Kahn, an osteopath and orthopedic surgeon, who reported that an MRI report of Plaintiff's left knee revealed "[n]o abnormalities..." and that the x-rays revealed "no fracture or dislocation." (Id. at 169-70.) Dr. Kahn also stated that Plaintiff's knee pain was "most likely secondary to chondromalacia of the patella/minor arthritis." (Id.) Dr. Kahn expressed no opinion as to Plaintiff's disability and placed no restrictions on he ability to work. (Id.)

6

In sum, of the doctors evaluating Plaintiff only Dr. Wartenberg
and Dr. Hu opined that Plaintiff has some restrictions on his
ability to perform his job as a plant engineer.

In response to the evaluations provided by Plaintiff,
Broadspire obtained an independent General Peer Review Report
from Dr. Martin Mendelssohn, M.D. an orthopedic surgeon.  (Id.
at 43.)  Dr. Mendelssohn reviewed Plaintiff's application, notes
from the short-term disability benefits claims administrator,
and doctors' notes from Drs. Gray, Hu, Wartenberg and Weinar
(Plaintiff's primary care physician) and concluded, among other
things, that:

> Based on the medical documentation, the lack of any
> significant objective findings including neurological
> deficit, a normal MRI of his knee with a normal
> physical exam of the knee, fail to support a functional
> impairment that would preclude the claimant from his
> regular occupation as a Plant engineer which is a
> medium exertion level.  Based on the medical
> documentation, I do not agree with the above
> restrictions that were place on [Plaintiff's ability to
> work] by Dr. Hu.

(Id.)  From this and a review of all the information provided to
Mendelssohn, Broadspire denied Plaintiff's claim for benefits.
Specifically, in a letter to Plaintiff on March 26, 2004,
Broadspire stated:

> Based on the medical documentation, the lack of any
> significant quantitative findings including
> neurological deficit, a normal MRI of the knee with a
> normal physical exam of the knee, fail to support a

functional impairment that would preclude you from your
regular occupation....

(Id.)

### C.   **Plaintiff's Appeal is Denied**

On August 2, 2004, Plaintiff appealed the initial denial of
LTD benefits to the Plan Administrator, the Bayer ERISA Review
Committee (the "Review Committee").  (Amended Compl. ¶ 13.)
Included in the appeal was a Functional Capacity Evaluation
("FCE") conducted on May 20, 2003 by the Center for Aquatic
Rehabilitation.  (AF at 4-28.)  Also included was a Residual
Physical Functional Assessment by Dr. Wartenberg and a two-page
letter from the Social Security Administration advising
Plaintiff that he had been awarded social security disability
benefits.[5]  (Id. at 29-38.)  Plaintiff's FCE concluded that
Plaintiff was capable of performing work at a sedentary level
for eight hours a day.  (Id. at 6.)  Dr. Wartenburg's assessment
indicated that Plaintiff could do occasional lifting of less
than 10 pounds, could stand and walk less than two hours per
work day, and had to alternate between sitting and standing to
relieve pain.  (Id. 30-37.)

---

[5]  Prior to August 1, 2004, Plaintiff was notified by the
Social Security Administration that he was awarded social
security disability benefits.  The Notice of Award provided no
information regarding the basis for the award, however. (AF 41-
42.)

On August 19, 2004, the Review Committee notified Plaintiff
that it would require an extension of time until November 16,
2004 to decide the appeal.  (Murphy Decl. ¶ 8.)  Soonafter,
Broadspire obtained another Physician Peer Review, by Dr. George
Crane, an orthopedic surgeon.  (AF at 78-79.)  Dr. Crane's
September 2004 report concluded that the medical evidence did
not support a functional impairment from February 2004 through
September 2004 and did not support a determination of
disability.  Crane noted that x-rays of the left knee were
negative and that Plaintiff's MRI showed no abnormalities.

Next, Broadspire transmitted the file and Appeal Summary to
the Review Committee who obtained an independent medical review
and report from Dr. David Saland.[6]  (AF 45-50.)  Dr. Saland
reviewed the LTD Appeal Summary and correspondence, Plaintiff's
occupational demands, medical records from Drs. Hymowitz,
Weinar, Wartenberg and Hu, the May 20, 2003 FCE and the
Physician Peer Reviews of Drs. Mendelssohn and Crane.  (Id. at
80.)  Dr. Saland's report also specifically addressed the May
20, 2004 FCE provided by Plaintiff.  In sum, Dr. Saland
disagreed with the conclusions in the FCE based on his own
review of the FCE, concluding that data from the FCE did not
support the result reached by Plaintiff's evaluators that

---

[6]  According to Susan Murphy, Dr. Saland was retained for
the Review Committee by Managed Care Networks, which is not
affiliated with Bayer.

Plaintiff had limited abilities.  Instead, Dr. Saland concluded
that "[t]hese medical records support my opinion that
[Plaintiff] was not totally disabled from performing his
position of plant engineer as outlined in the enclosed job
analysis from February 5, 2004 through the present."  In a
letter dated November 18, 2004, the Review Committee denied the
appeal.  (Amended Compl. ¶ 14; Murphy Decl. ¶ 4, Ex. C.)

> D.   **Procedural History**

On June 27, 2005 Plaintiff filed an Amended Complaint with
this Court alleging that Bayer violated ERISA by denying
Plaintiff LTD benefits. [Docket Item No. 12.]  Both Bayer and
Plaintiff moved for summary judgment.  [Docket Item No. 15 and
16.]  Both Bayer and Plaintiff filed briefs in opposition to the
other's motion for summary judgment.  [Docket Item No. 21 and
22.] These motions are decided without oral argument pursuant to
Rule 78, Fed. R. Civ. P.

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

Plaintiff and Bayer have cross-moved for summary judgment
pursuant to Rule 56, Fed. R. Civ. P.  A court may grant summary
judgment when the materials of record "show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d
Cir. 1983).  A dispute is "genuine" if "the evidence is such that

a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.[7]  Id.  The summary judgment standard does not change when, as here, the parties have filed cross-motions for summary judgment.  See Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987).[8]

---

[7]  Moreover, a non-moving party must do more than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477 U.S. at 249-50.  Thus, if the non-moving party's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment.  Liberty Lobby, 477 U.S. at 249-50; Country Floors, 930 F.2d at 1061-62.

[8]  Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001) (citing Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).  If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.  See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citing Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139, 145-46 (3d Cir. 1988)).

## III. DISCUSSION

### A.   **Standard of Review**

The first step in the Court's analysis of Plaintiff's claim is to determine the proper standard of review to apply to Bayer's decision to deny Plaintiff's LTD benefits claim.  ERISA does not set out the standard of review for actions brought under Section 1132(a)(1)(B) by an employee alleging that he has been denied benefits he is entitled to under a covered plan.  See 29 U.S.C. § 1132(a)(1)(B).  However, in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 108-11 (1989), the Supreme Court held that, when a benefits plan affords the administrator discretionary authority to construe the plan or determine eligibility for benefits, the administrator's interpretation of the plan will be reviewed under an arbitrary and capricious standard.  This standard of review applies whether the plan administrator's determination was based on (i) the interpretation of the plan or (ii) factual determinations (so long as the plan authorizes the administrator to make such factual determinations).  See Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3d Cir. 1997).

### 1.   **Arbitrary and capricious standard versus a "heightened" arbitrary and capricious standard**

A modified arbitrary and capricious standard is proper, however, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest." Firestone Tire & Rubber Co., 489 U.S. at 115 (a plan

12

administrator's conflict of interest "must be weighed as a factor in determining whether there is an abuse of discretion") (internal quotations omitted); see Kosiba v. Merck & Co., 384 F.3d 58, 67 (3d Cir. 2004).  When reviewing an ERISA plan fiduciary's discretionary determination regarding benefits, a court must apply a so-called "heightened" arbitrary and capricious standard of review.  See Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 378 (3d Cir. 2000).  This heightened standard of review uses a "sliding scale approach" for determining what modifications (if any) a court must make to the level of scrutiny applied to a plan administrator's decision so that "the degree of scrutiny [intensifies] to match the degree of conflict."  Id. at 392.  When applying the standard, a court is directed to consider "the nature and degree of apparent conflicts."  Id. at 393.

The Third Circuit Court of Appeals has identified three circumstances that can trigger a heightened arbitrary and capricious standard of review.  First, the plan administrator may be operating under a structural conflict of interest.  See Pinto, 214 F.3d at 383.  According to the Pinto court, only one of the three ways in which companies typically structure the relationship between the ERISA plan administration, interpretation and funding presents a conflict of interest.  In explaining the three typical structures, the Court explained:

> First, the employer may fund a plan and pay an
> independent third party to interpret the plan and make
> plan benefits determinations.  Second, the employer may
> establish a plan, ensure its liquidity, and create an
> internal benefits committee vested with the discretion
> to interpret the plan's terms and administer benefits.
> Third, the employer may pay an independent insurance
> company to fund, interpret and administer the plan.

Id.  According to the Pinto court the third scenario outlined

above "generally presents a conflict and thus invites a

heightened standard of review." Id.  The court reiterated that

the Third Circuit "previously held that the first two

arrangements do not, in themselves, typically constitute the kind

of conflict of interest mentioned in Firestone." Id.  Thus,

situations, like here, where an employer establishes an ERISA

plan, ensures its liquidity, and creates and internal benefits

committee vested with the discretion to interpret the plan's term

does not generally present a conflict of interest.  See id.

Second, the heightened arbitrary and capricious standard of

review may be appropriate if the plaintiff shows "demonstrated

procedural irregularities, bias or unfairness in the review [by

the plan administrator] of the claimant's application for

benefits." Kosiba, 384 F.3d at 66; Vitale, 402 F.3d at 283.

This can come in the form of the either (a) plan administrator's

"self-serving" use of one doctor's expertise; (b) inconsistent

treatment of the same facts; and (c) when at a "crossroads," the

plan administrator disfavors the claimant. Pinto, 214 F.3d at

393-94; see also Kosiba, 384 F.3d at 66.  However, the claimant

14

bears the burden of proving procedural bias or bad faith by presenting the court with specific evidence of bias.  See Bill Gray Enters., Inc. Employee Health & Welfare Plan v. Gourley, 248 F.3d 206, 216 (3d Cir. 2001)("Unless specific evidence of bias or bad-faith has been submitted, plans...are reviewed under the traditional arbitrary and capricious standard); see also Goldstein v. Johnson & Johnson, 251 F.3d 433, 435-36 (3d Cir. 2001)(heightened arbitrary and capricious review is required when "the beneficiary has put fourth specific evidence of bias or bad faith in his or her particular case.")

Finally, a claimant's "status as a former employee might well trigger some heightened level of review...."  Kosiba, 384 F.3d at 65.  Specifically, in Stratton v. E.I. DuPont de Nemours & Co., 363 F.3d 250, 255 (3d Cir. 2004), the Third Circuit recognized that an employer administering an unfunded plan risks "the loss of morale and higher wage demands that could result" from the employer denying an employee benefits.  The Third Circuit has also "recognized the inverse as well: When a former employee seeks benefits, this conflict-mitigating consideration is not present."  Kosiba, 384 F.3d at 65 (emphasis in original) (citing Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc.

Employee Health & Welfare Plan, 298 F.3d 191, 198 (3d Cir. 2002).[9]

### 2.   Analysis

The parties dispute whether an arbitrary and capricious standard or a "heightened" arbitrary and capricious standard is the proper standard of review.[10]   In their motion papers, Bayer argues that an arbitrary and capricious standard is appropriate because there is no structural conflict of interest.   Bayer argues that the Plan "falls under category two of the three types of administrative arrangements described in Pinto."   (Def.'s Br. at 8.)   Second, Bayer contends that, by retaining a disinterested outside entity, Broadspire, to investigate and make the initial determination of claims, the Plan "has additional safeguards which have been held to militate against a heightened scrutiny."   Finally, according to Bayer, the fact that Broadspire, and not Bayer, retained the peer review physicians used in the analysis

---

[9]   Thus, Third Circuit "precedent recognizes that the situation of an individual claiming benefits from her employer may, for Pinto purposes, be more akin to that of an insured claiming benefits from an insurance company than that of an employee claiming benefits from her current employer."   Kosiba, 384 F.3d at 66.

[10]   Here, it is clear (and, in failing to oppose it, Plaintiff concedes) that the Plan vests discretion in the plan administrator to make both factual determinations and to interpret the terms of the Plan and to determine eligibility of benefits under the Plan.   (Plan § 8.4, SPD 28.)   Thus, an arbitrary and capricious standard is warranted under the holdings of Firestone and Mitchell.

of Bayer's claim "greatly mitigates any potential conflict." (<u>Id.</u> at 9.)

Plaintiff, in contrast, advocates for the "heightened" arbitrary and capricious standard of review.  First, Plaintiff argues that the "heightened" standard is warranted because Plaintiff "is a former employee, terminated by Bayer because his position was eliminated."  (Pl.'s Br. at 9.)  Second, Plaintiff argues that the heightened standard is triggered by the fact that "the trust fund used to pay benefits is funded by contributions from the general company assets" and that "the relationship between Bayer and the trust is merely one of form over substance."  (<u>Id.</u>)  Finally, Plaintiff argues that numerous procedural irregularities exist that trigger a heightened standard of review including: (1) the LTD administrator's ignoring or withholding information; and (2) communications from Broadspire (regarding Bayer's initial denial of benefit) and the Review Committee (requesting an extension of time) "contained misrepresentations"  In addition, Plaintiff argues that "clear evidence of bias" was shown by the peer reviewed physicians reviewing Plaintiff's claims.  (<u>Id.</u> at 11.)

### a.   Bayer's Plan presents no structural conflict of interest

This Court finds no conflict of interest in the administration, interpretation and funding of the Plan to warrant the application of a heightened arbitrary and capricious

17

standard.   Rather, the structure of the Plan falls squarely into the second category outlined by the Third Circuit in <u>Pinto</u>. First, the Plan was an employer-funded plan.   Bayer established a Trust (with Mellon Bank serving as the trustee) and  the Trust's funds are used exclusively to pay benefits under the LTD benefits plan or pay expenses associated with operating the Trust. (Martin Decl. ¶ 3.) Second, Bayer ensured the liquidity of the trust partially through "periodic contributions" from Bayer and partially through employee-participant salary reduction contributions.  (<u>Id.</u>; Plan § 8.2)  Finally, Bayer created a committee vested with the discretion to interpret the terms of the plan, make findings of fact and determine eligibility for and the amounts of any benefits payable under the Plan.  (Plan § 8.4).[11]

---

[11]   It is unclear whether Bayer's "periodic funding" refers to payments made sporadically as needed to replenish the funds in the Trust, at regular intervals, or pursuant to an actuarial formula.  However, the fact that Bayer's funding of the Plan may not be done through an actuarial formula, does not mean that a heightened standard is warranted.  Indeed, it appears that Bayer has take a number of steps to remove any direct financial incentive it may have to deny claims.  For example, Bayer has appointed a trustee who is charged with managing and controlling the trust in a manner that is consistent with the trust agreement.  (Martin Decl. ¶ 3.)  Second, the proceeds from the trust are used only to pay long-term disability benefits awarded under the Plan (and to pay expenses associated with administration of the Plan).  Given this structure, the Plan is structured in a manner similar to the ERISA plan structure the Third Circuit analyzed in <u>Mitchell</u> in which the Third Circuit reviewed and found no conflict of interest existing:

Although the Plan is self-insured, the Plan assets are

**b.   Plaintiff has failed to present evidence of any procedural irregularities or bias**

In Goldstein, the Third Circuit held that, where there is no structural conflict of interest, the traditional arbitrary and capricious standard of review should be applied, unless the Plaintiff can point to "specific facts calling the impartiality of the [Trustees] into question." Goldstein, 251 F.3d at 435-36; Gourley, 248 F.3d at 216 (if there are no structural conflicts of interest, the "traditional" arbitrary and capricious standard is appropriate "unless specific evidence of bias or badfaith has been submitted....") Moreover, Plaintiff bears the burden of proving that a heightened scrutiny should be applied.

The Court finds that Plaintiff has not met the burden of proof that heightened scrutiny is appropriate.  Plaintiff has failed to come forward either with specific facts or specific

_____

administered by a trustee pursuant to a trust agreement that provides that funds "may not be used for any purpose other than the exclusive benefit of persons entitled to benefits under the Plan and for reasonable expenses in administering the Plan."  Therefore, because [the defendant] incurs no direct benefit, nor does it benefit directly from the denial or discontinuation of benefits, there is no conflict of interest sufficient to justify heightened review of the Administrator's decision.

Mitchell, 113 F.3d at 437, n. 4; see also Vitale, 420 F.3d at 282-83 (no conflict of interest -- and therefore no heightened scrutiny -- where the company's ERISA plan is 'funded,' meaning that the "benefits are paid out of a separate trust fund....") Following Mitchell, this Court too finds that no conflict of interest exits.

evidence of bias that call the Plan Administration's impartiality into question.  Plaintiff only makes conclusory statements and arguments that are unsupported by evidence in the record.  For example:

- Plaintiff argues that Broadspire ignored or withheld certain information passed on from the short-term disability administrator when Broadspire provided information to the peer review physicians.  (Pl.'s Br. at 10.)  However, Plaintiff provides no basis for the contention.  In fact, the Physician Peer Review reports specifically refer to documents passed on from the short-term disability administrator.

- Plaintiff argues that Broadspire's letter to Plaintiff denying his LTD benefits "contained misrepresentation" as the initial denial letter failed to mention that Dr. Mendelssohn had recommended that an examination of Plaintiff take place.  Such a failure to mention a conclusion does not rise to the level of misrepresentation.  Similarly, Plaintiff claims that the Review Committee misrepresented to Plaintiff the reasons for the need for the 45-day delay period.  Again, such a statement certainly does not rise to the level of a procedural irregularity that would require a heightened standard of review.

- Plaintiff argues that the selection of Dr. Saland to review Plaintiff's medical records was "obviously in attempt to refute the findings of the FCE after Dr. Crane failed to do so."  Again, as Bayer points out, Plaintiff provides no facts or evidence to suggest that Bayer hired Dr. Saland in an attempt to minimize the findings of Plaintiff.

- Finally, Plaintiff argues that there is clear evidence of bias shown in the report of the second peer review physician, Dr. Crane, "whose...lack of mentioning of the findings of both the company's physician and plaintiff's treating chiropractor as well as the other physicians who had examined Plaintiff."  However, as Bayer points out, Crane did reference the findings of Plaintiff's chiropractor (Wartenburg) in his report.  (AF 79.)  Moreover, as Bayer points out, Plaintiff has not presented the Court with any report of the "company's physician."

  **c. The fact that Plaintiff is a former employee of Bayer, by itself, does not warrant this Court to apply a heightened standard of review.**

  Plaintiff argues that a heightened standard is required here because Plaintiff is a former employee of Bayer and therefore Bayer was not concerned that its decision to deny Plaintiff's claim would impact morale and wage demands of other employees. Indeed, this Court "recognizes that the situation of an individual claiming benefits from her employer may, for <u>Pinto</u> purposes, be more akin to that of an insured claiming benefits from an insurance company than that of an employee claiming benefits from her current employer." <u>Kosiba</u>, 384 F.3d at 66.

  However, no court in this jurisdiction has applied the heightened arbitrary and capricious standard solely because the claim for benefits was brought by a former employee versus a current employee.  In contrast, courts in this Circuit have not addressed this issue unless they have previously found that the Company had a conflict of interest.  <u>See</u> <u>id.</u> at 67.  For example, in <u>Kosiba</u>, (which was cited by Plaintiff in support of its argument for a heightened standard of review), the court never considered the fact that the claimant was a former employer after it concluded that the company had no immediate financial conflict of interest.[12]  <u>Id.</u>  Moreover, Plaintiff has failed to present

---

   [12]  The court in <u>Kosiba</u> held that:

21

any evidence to suggest that the fact that Plaintiff was a former employee impacted either Broadspire's or the Review Committee's determinations regarding Plaintiff's claim.  As such, this Court will not, then, hold that heightened scrutiny is warranted solely because the claimant was a former employee.[13]

### d.   Bayer has inserted an additional safeguard militating against application of a heightened standard

Further militating against the application of a heightened standard of review is the fact that Bayer retained Broadspire, an independent outside entity to investigate claims for benefits and make the initial determination on whether they are meritorious. The Third Circuit Court of Appeals has recognized that the intervention of a neutral decision-maker at the initial claims determination stage significantly diminishes the conflict of interest resulting from the employer's financial interest.

---

We reiterate, however, our conclusion above that [claimant's] status as a former employee might well trigger some heightened level of review if, for example, [the defendant] pays Plan benefits out of its general operating funds.

Id. at 67.

[13]   The Court notes too that Plaintiff has presented no evidence that Plaintiff was terminated.  The only reference in Plaintiff's papers to the fact that he was terminated or the date of termination (July 20, 2004) was in Plaintiff's Response to Defendants' Statement of Material Facts ¶ 1.  The Response cites Plaintiff's Amended Complaint ¶ 6 which does not contain any allegation or information regarding when or whether Plaintiff was terminated.  Nonetheless, it will be assumed this termination date is accurate, in the absence of objection by Defendant.

Stratton, 363 F.3d at 255 ("the fact that DuPont structured the program by using Aetna to hear the claim initially provides the safeguard of neutral evaluation...[and] counsels for only a slightly heightened standard.")   Thus, this Court credits this factor too in Bayer's favor and holds that an arbitrary and capricious standard is warranted.

   **B.   Incompleteness of the Record Precludes Deciding Whether Bayer's Determination was Arbitrary and Capricious**

   Under the arbitrary and capricious standard, a district court may overturn a plan administrator's decision "only if it is 'without reason, unsupported by the evidence or erroneous as a matter of law.'"  Mitchell, 113 F.3d at 439 (quoting Abnathya v Hoffman LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)); see Pinto, 214 F.3d at 378.  "This scope of review is narrow." Abnathya, 2 F.3d at 45.  Moreover, the district court "is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits."  Id. (quoting Lucash v. Strick Corp., 602 F. Supp. 430, 434 (E.D. Pa. 1984); see also Mitchell, 113 F.3d at 439.  Under the arbitrary and capricious standard, the district court must determine whether the plaintiff carried his burden by looking at the "whole record" -- where "whole record" consists of "that evidence that was before the administrator when he made the decision being reviewed." Mitchell, 113 F.3d at 440 (citing Luby v. Teamsters Health,

Welfare, and Pension Trust Funds, 944 F.2d 1176, 1184 (3d Cir. 1991)).

In this Circuit, the plaintiff has the burden of proving his entitlement to disability benefits.  See Pinto, 214 F.3d at 383. Bayer argues that Plaintiff cannot prove that the Plan Administrator's decision was made "without reason [or] unsupported by substantial evidence."  (Def.'s Br. at 13-14.) Instead, substantial evidence supported the ERISA Review Committee's (the "Review Committee") decision including reports from three peer review physicians (Drs. Martin Mendelssohn, M.D., George Crane, M.D., and David K. Saland, M.D.) that concluded that Plaintiff had no restrictions that would prevent him from doing work as a plant engineer.  (Id.)  Moreover, Bayer argues that the Review Committee is not obligated to accept the opinions of Plaintiff's doctors or give weight to the conclusion that Plaintiff was found to be disabled by Plaintiff's treating physician.  (Id. at 14.)

Plaintiff raises three arguments in support of its position that the Review Committee's decision was arbitrary and capricious.  First, Plaintiff argues that Bayer did not utilize the required approach of assessing medical documents of disability.  (Pl.'s Br. at 11.)  Instead, Bayer relied on three peer review physicians who did not consider all medical evidence or examine Plaintiff.  Moreover, Plaintiff argues that Bayer's

24

failure to consider the decision made by the Social Security Administration regarding Plaintiff's social security disability insurance claim was arbitrary and capricious.  Finally, Plaintiff argues that Bayer's sole reliance on Dr. Saland's opinion was arbitrary and capricious because Saland's opinion failed to consider all the medical evidence provided to him.[14]

### 1.   Plaintiff's Social Security disability determination

Plaintiff concedes that the decision of the Social Security Administration is not binding on this Court's finding of disability under the Plan.  (Pl.'s Br. at 12.)  I have previously observed that "there is no legal requirement that a plan administrator...specifically address the decision of an administrative law judge when deciding whether a plaintiff is to be considered totally disabled."  Stith v. Prudential Ins. Co. of Am., 356 F. Supp. 2d 431, 441 n.4 (D.N.J. 2005)(dictum).

While there may be no legal requirement to address the decision of the administrative law judge, it "may nevertheless

---

[14]   This Court also notes Plaintiff's argument that, like with an appeal for social security disability insurance, this Court should given greater weight to the conclusions of Plaintiff's treating physicians.  (Pl.'s Br. at [13].)  This argument, however, is unpersuasive in light of recent Supreme Court precedent addressing this very issue.  See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003)("Courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.")

prove useful to do so" when making disability determinations.
Id., at 440; see also Marz v. Meridian Bancorp Inc., 32 Fed.
Appx. 645 (3d Cir. 2002).  Although finding that the denial of
disability plan benefits was arbitrary and capricious on other
grounds, this Court found it "troubling that Defendant's
determinations make no reference at all to the finding of total
disability" made by the Social Security Administration.  Stith,
356 F. Supp.2d at 441 n.4  Evidence used in Social Security
disability determinations, while not dispositive, is certainly of
"at least some evidential value."  White v. UnumProvident, 2005
U.S. Dist. LEXIS 34392, *37 (D.N.J. July 18, 2005.)

    Here, there is no evidence that the favorable Social
Security disability determination was a part of the Review
Committee's final analysis.  It is not mentioned in the Review
Committee's final rejection letter to Plaintiff, (Murphy Decl. ¶
4, Ex. C), and the letter makes no mention of why the
determination was rejected as evidence of Plaintiff's disability.
It seems to have been overlooked or ignored.  This evidence is
highly relevant to whether Plaintiff is "totally disabled" (as
that term is defined in the Plan) and whether Plaintiff can
continue to perform his job as a plant engineer.  The evidence
underlying Plaintiff's favorable determination is of particularly
high value in a case like this -- where Plaintiff claims
disability due in part because of pain -- because the Social

26

Security Administration's stringent requirements for disability based on pain.[15]

A finding of total disability by the Social Security Administration, concurrent with the application process at issue in this ERISA case, is highly significant.  First, the standard for disability applied by the Social Security Administration is at least as exacting as the standard under the Plan.  By statute, the claimant must prove that he is disabled due to a medical condition which precludes his ability to hold gainful employment at <u>any</u> job, <u>see</u> 42 U.S.C. § 1382c(a)(3), while the Plan confers disability benefits when unable to perform the current job or, after six months, any available job.  (SPD 161.) Second, under the Social Security Act, such a disability must be expected to last at least twelve months, while under the Plan there is no anticipated duration requirement.  (<u>Id.</u>)  Third, as mentioned in footnote 15, <u>supra</u>, where a Social Security disability claim is based upon disabling pain, the claimant must show medical signs and objective test results that would support the causation of the pain; hence, if the claimant's disability is based on pain, there necessarily had to be a conclusion by the Social Security

---

[15]   <u>See</u> <u>Bittel v. Richardson</u>, 441 F.2d 1193, 1195 (3d Cir. 1971)(subjective complaints of pain must be accompanied by medical signs or laboratory findings which show that the claimant has a medical impairment which could reasonably be expected to produce the pain); <u>Simonds v. Heckler</u>, 807 F.2d 54, 58 (3d Cir. 1986); <u>see</u> <u>also</u> 21 C.F.R. 404.1529.

Administration that it had an objective medical basis, something the Review Committee claimed was absent from the record here.

Finding that there is considerable evidence that the Review Committee neglected to analyze related to Plaintiff's favorable and concurrent Social Security disability determination, the Court will grant Plaintiff's motion in part (vacating the decision of the Review Committee) and remand to Bayer's Review Committee for reconsideration of Plaintiff's favorable disability determination.[16]  Presumably, the Review Committee will permit Plaintiff to submit to it as much of the administrative record as can readily be obtained, since that record will shed light upon the medical reports and other evidence customarily required by the Social Security Administration's review process.[17]

---

[16]  The Third Circuit and others circuit courts have recognized that "if a court considers the record to be incomplete, it can remand a case for further administrative review."  James F. Jordon et al., Erisa Litigation § 4.04[C][5] (2d ed. 1997); Goletz v. Prudential Ins. Co. of Am., 425 F. Supp. 2d 540, 553 (D. Del. 2006)("The Third Circuit has recognized that remand may be an appropriate remedy when additional evidence must be considered by the administration to resolve a factual issue.")(citing Mitchell v. Eastman Kodak Co., 113 F.3d 433, 436 (3d Cir. 1997)); Caldwell v. Life Ins. Co. of North Am., 287 F.3d 1276, 1288 (10th Cir. 2002)

[17]  This Court does not suggest that the administrative process employed by the Social Security Administration, 42 U.S.C. § 405, et seq., should be imported into, or even inform, the Review Committee's processes.  Consultation with the underlying reports, examinations, testimony and findings from the Social Security process, however, for whatever weight the Review Committee wishes to give it, would help fill a gap in their efforts.

## 2. Bayer's "sole" reliance on Dr. Saland's opinion

Finally, Plaintiff argues that Bayer's denial of Plaintiff's appeal was based solely upon Dr. Saland's record review and Dr. Saland failed to consider all the medical evidence provided to him.  Plaintiff continues, arguing that Dr. Saland was not familiar with the particular testing protocol used to administer the May 23, 2004 FCE and ignored much of the data contained therein.  As such, according to Plaintiff, the Review Committee's decision to deny was arbitrary and capricious.

The Court disagrees with Plaintiff's contention that the Review Committee's determination was made solely upon Dr. Saland's review.  To the contrary, the Review Committee's denial letter dated November 18, 2004 states specifically that the Review Committee:

> [C]onsidered the information you submitted with your appeal, including the FCE of [Plaintiff] conducted by the Center for Aquatic Rehabilitation...[and] peer reviews conducted by the third-party administrator of the Plan, Broadspire and [Dr. Saland's review].

(Murphy Decl. ¶ 4, Ex. C.)  Simply because the Review Committee chose to highlight the findings of Dr. Saland in its letter to Plaintiff does not mean that the Review Committee only considered his report and not the other evidence before the Review Committee.  Finally, as a physician who is certified to evaluate functional testing (AF 85) and who is also independent of Bayer, the Review Committee was entitled to rely on his assessment

29

regarding both Plaintiff's medical condition and the validity of the FCE.  (AF 83-84.)

Such reliance, by itself, cannot be found to be arbitrary and capricious.  However, the Court remains troubled by the fact that the other two reviewing physicians retained by Bayer (Drs. Crane and Mendelssohn) recommended that Plaintiff be physically examined, but the Review Committee did not do so.  (AF 44, 79.) While the Review Committee certainly has no obligation to conduct independent medical examinations in making benefits determinations, see Pinto, 214 F.3d at 394, n.8 and Stith, 356 F. Supp.2d at 440, n.3, this Court finds that the unexplained decision not to follow the peer physicians' recommendations for a physical exam renders the medical record incomplete.  As with Section II.B.1, supra, this Court will remand to Defendants' Review Committee for reconsideration consistent with this Opinion.

**IV. CONCLUSION**

This Court will deny Bayer's motion for summary judgment, grant Plaintiff's cross-motion for summary judgment in part, vacate the Review Committee's denial of Plaintiff's claim, and remand this case to Bayer's Review Committee for reconsideration consistent with this Opinion.  The Court has concluded that the arbitrary and capricious standard of review is appropriate. Applying this standard of review, the Court cannot determine whether the Review Committee's decision to deny Plaintiff LTD

benefits was either "without reason, unsupported by the evidence or erroneous as a matter of law." <u>Mitchell</u>, 113 F.3d at 439, because the Review Committee (1) ignored Plaintiff's favorable Social Security disability benefits determination and (2) failed without explanation to obtain an independent medical examination as recommended by two of its own peer review physicians.  The accompanying Order is entered.


**June 30, 2006**                              **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         United States District Judge

31